Lemire, James R., J.
Plaintiff, Kevin Lou (Kevin), his mother Beilin Chen and father Jidong Lou (collectively Lou) bring this action against Otis Elevator Company (Otis) for injuries sustained by Kevin in 1998. The plaintiffs now move the Court for sanctions for spoliation of evidence, in particular a skirt panel that was removed from the escalator on which Kevin was injured. Otis opposes plaintiffs’ motion for sanctions and claims that it is not responsible for the actions of a wholly separate legal entity, China Tianjin Otis Elevator Company (“CTOEC”). For the following reasons the plaintiffs’ motion for sanctions is allowed in part and denied in part.
BACKGROUND
After a hearing and upon review of the documents submitted by the parties, the Court finds the following facts by a preponderance of the evidence. Kevin and his parents reside in Worcester County, Massachusetts. On October 18, 1998 while riding down an escalator with his grandmother at the Changzhou Tianyuan Department Store in the People’s Republic of China, Kevin’s hand became entrapped in and was injured by the escalator. A skirt panel was removed from the escalator in the area where it was believed that Kevin’s hand became entrapped. The skirt contained a dent of four millimeters to six millimeters in depth. CTOEC took possession of the skirt panel and it was delivered to the CTOEC’s headquarters in Tianjin, China. The panel was held by Yang Quanxi who was an Administrative Manager at CTOEC until October 27, 1998 when it was transferred to Bao Hai Zhang of CTOEC’s Security Department for safekeeping. The panel was subsequently transferred to Lui Wei Liang, the Director and Senior Person in CTOEC’s Environmental and Health Safety Department. Mr. Liang thereafter stored the skirt panel in his office. On January 7, 2000 the panel was taken by CTOEC’s insurance adjuster, Ray Koke, and delivered on January 20, 2000 to Simon Weston, another adjuster. Simon Weston retained an independent metallurgist, Dr. Thomas Parry, to inspect the panel. The panel was returned to CTOEC on January 21, 2000 where it was once again stored in the office of Mr. Liang.
The plaintiffs commenced the present product’s liability action naming Otis Elevator Company as the defendant on May 26, 2000. In late 2000, early 2001 attorneys for Otis learned that the subject skirt panel had been removed from the escalator and requested representatives of CTOEC to hold and care for the skirt panel. Otis acknowledges that they did not attempt to have the panel delivered to Otis in the United States at that time and cites several reasons for that decision, including legal proceedings initiated by the plaintiffs in China prior to the suit in Massachusetts. In December 2001, Mr. Liang, who had possession of the skirt panel in his office, left the employment of CTOEC. Mr. Liang’s office was thereafter cleaned out. Otis was informed in 2004 for the first time that the skirt panel’s whereabouts in CTOEC’s offices was unknown; that it had either been lost or misplaced.
In December 2000 the plaintiffs had moved to compel Otis to produce documents in their possession custody in the possession custody or control of CTOEC which was opposed by Otis who claimed they did not have control over a subsidiary CTOEC. By the Order of Judge Geenty the plaintiffs’ motion was allowed relying on Strom v. American Honda Motor Co., Inc., 423 Mass. 330 (1996).
On March 30, 2003 the plaintiff served their third request for production upon Otis. In these requests the plaintiffs sought “all component parts taken from the escalator at any time after the incident, including the defective skirt panel” to be produced. Sometime in 2004 Otis was attempting to respond to plaintiffs’ third request for production, they learned that CTEOC could no longer locate the skirt panel. In fact the skirt panel was thereafter never located and presumed lost. There is no evidence suggesting that Otis or CTOEC willfully or in bad faith destroyed or lost the skirt panel. The facts indicate that Otis and CTOEC were negligent in their safekeeping and storage of the skirt panel and this resulted in the loss of the panel.
I find that Otis exerted control over CTOEC immediately following the injury to Kevin and continuing until after the discovery that the skirt panel was lost. Otis’s depuiy general counsel, Ping Am Hsieh (Hsieh), was aware of the potential for Otis being sued in the United States as early as November 1998. Hsieh informed CTOEC’s president in an email on January 30, 1999 that he (Hsieh) wanted full involvement in this matter and that nothing should be done without his “vetting.” Hsieh chastised CTOEC’s president in the same email for failing to consult with him and called the behavior “unacceptable.” Otis continued to control *286 CTOEC during the claims process in China and in late 2000 or early 2001 Otis advised CTOEC to properly secure the skirt panel. Otis decided not to have the skirt panel sent to the United States but instead chose to have CTOEC secure it in China. Taking the actions and inactions of Otis in their relation with CTOEC I find that Otis exerted sufficient control over CTOEC to establish an agency relationship.
DISCUSSION
Spoliation of evidence occurs when there has been an intentional or negligent destruction or loss of evidence that unfairly prejudices an opposing party. Keene v. Brigham and Women’s Hosp., Inc., 439 Mass. 223, 235 (2003). In order to obtain relief for the spoliation of evidence, a moving party must demonstrate that the opposing party deliberately or negligently lost or destroyed the physical evidence; that the opposing party was aware that there was a potential for litigation and that the evidence was material to that litigation; and that the loss or destruction of the evidence prejudiced the moving party. See Nally v. Volkswagen of America, 405 Mass. 191, 197-98 (1989); Bolton v. Massachusetts Bay Transp. Auth., 32 Mass.App.Ct. 654, 656 (1992). Massachusetts allows for a broad range of remedies for the spoliation of evidence including default; dismissal; exclusion of evidence; permitting adverse inferences against the spoliator; allowing the aggrieved party to present evidence about the pre-accident condition of the lost evidence and the circumstances surrounding the spoliation; and instructing the jury on the inferences that may be drawn from spoliation. Gath v. M/A Com., Inc., 440 Mass 482, 490 (2003).
The trial court has wide-ranging discretion in fashioning appropriate sanctions against a spoliator. The purpose of sanctions is to prevent unfair prejudice to the non-spoliator occasioned by the lost or destroyed evidence. Nally, 405 Mass. at 197-98. To that end, a court imposing sanctions upon a spoliator should narrowly tailor the sanction and impose the least restrictive sanction available. Keene, 439 Mass. at 223. In most instances, the more serious sanctions, i.e., dismissal or default judgment, must be predicated on a finding of bad faith or willfully losing or destroying the evidence. Id. at 236.
In the present case there is no evidence that Otis or CTOEC willfully or in bad faith destroyed or lost the skirt panel. Rather, the facts indicate CTOEC negligently lost the skirt panel. Because Otis exerted sufficient control over CTOEC to establish an agency relationship, CTOEC’s negligence will be imputed to Otis, and the court will consider Otis a spoliator.
The thrust of Lou’s case is that this particular skirt panel had a higher coefficient of friction caused by a manufacturing defect, and that this higher coefficient of friction caused Lou’s hand to become caught in the escalator. Without the skirt panel available to test and analyze, Lou’s ability to prove his case may in fact be prejudiced. By the same token, Otis’s ability to defend the manufacturing process is likewise prejudiced by their own negligence in the loss of the panel.
In fashioning a remedy properly suited to this case, the court takes into account the negligent, as opposed to willful or deliberate, course of action of CTOEC. The court also takes notice of the prejudice accorded to both parties caused by the loss of the panel. To be sure, Lou bears the brunt of this prejudice in that he, the parly bearing the burden of proof, is left without a key piece of evidence in support of his theory. Still, Lou is not without resort to other means of proof, including expert witnesses and comparable skirt panels.
Because the loss of the panel was a result of negligence subjecting both parties to prejudice, and because Lou has other means of proof available to him, the court is unwilling to impose the drastic sanctions asked for by Lou. To instruct the jury to draw all inferences in favor of Lou and/or to proscribe Otis from offering any proof to rebut the proof offered by Lou is too severe a measure occasioned by the facts in this case. See Jackson v. Harvard Univ., 721 F.Sup. 1397, 1408-14 (D.Mass. 1989) (no adverse inference instruction where defendants entrusted evidence to parties within their control and evidence was destroyed). See also Keene, 439 Mass. at 235 (sanctions should be narrowly tailored and the least severe sanction should be imposed on spoliator).
CONCLUSION
The court concludes that the most appropriate remedy to the situation at hand is to allow both sides to present evidence of how the skirt panel became lost, and expert testimony on what the missing panel would have shown. Such evidence will “assist the jurors in deciding whether to draw a negative inference against the spoliator and the weight they will give such an inference.” Gath, 440 Mass. at 490.
The court will then instruct the juiy that they may, if they so choose, draw an adverse inference against the defendant. This instruction is in accord with others given under similar circumstances in this court. See, e.g., Stull v. Corrigan Racquetball Club, Inc., Civil No. 20011029 (Plymouth Super.Ct. February 27, 2004) (Troy, J.) [17 Mass. L. Rptr. 388); Rothenberg v. Bright Horizons Children’s Centers, Inc., Civil No. 966151 (Middlesex Super.Ct. May 13, 1999) (Fabricant, J.) [10 Mass. L. Rptr. 303].
ORDER
For the foregoing reasons, it is hereby ORDERED that the Plaintiffs’ Motion for Sanctions for Spoliation Evidence be allowed in part and denied in part. The court DENIES the plaintiffs’ requests 1) to preclude Otis from presenting evidence or challenging the plaintiff on the location of entrapment, 2) to preclude Otis from arguing or introducing evidence that a foreign object other than Kevin’s hand caused the panel de *287 formation, 3) to preclude Otis from arguing or introducing evidence that or questioning plaintiffs experts’ testimony that Kevin’s hand caused the deformation in the skirt panel, and 4) that Otis pay the expenses incurred by plaintiffs. The court ALLOWS the plaintiffs’ request for sanctions in that it will allow the plaintiff to introduce evidence of the spoliation and will instruct the juiy on the inferences they may draw from the spoliation.